56 U.S. 426
 15 How. 426
 14 L.Ed. 757
 JOHN DEN, EX DEM. ARCHIBALD RUSSELL, PLAINTIFF IN ERROR,
v.
THE ASSOCIATION OF THE JERSEY COMPANY.
 December Term, 1853
 
 THIS case was brought up by writ of error from the Circuit Court of the United States for the District of New Jersey.
 The action of ejectment was brought to recover a tract of land at Paulus Hook, now Jersey City, on the Jersey shore, formerly under the tide waters of the Hudson river, and below low-water mark. The locus in quo has been reclaimed from the water by artificial means, and was in the possession of the Jersey Associates, and occupied by them as building lots.
 Upon the trial in the Circuit Court it was ruled that the plaintiff had failed to make out a title, and the jury found for the defendants.
 The plaintiff excepted to the opinion of the court and the cause came up on a writ of error.
 It was argued by Mr. Rutherford and Mr. Van Santvoord, for the plaintiff in error, and by Mr. Zabriskie and Mr. Scudder, for the defendants.
 The title of the plaintiff in error was derived from the proprietors of East New Jersey, who claimed under a grant from Charles the Second to his brother James, Duke of York, in 1664.
 The proprietors living in 1776 having espoused the cause of the Americans, in the struggle of the Revolution, their property was not confiscated; and they are still recognized by the State of New Jersey as an existing body, for many purposes. They own a considerable quantity of unappropriated land, which is exempt from taxation.
 The argument of the case in this court covered a great deal of ground upon both sides; but as the decision of the court turned upon a single point, viz. that the main feature of the case had been adjudicated upon in Martin v. Waddell, 16 Peters, 367, it is not deemed necessary to do more than state the argument made by counsel to show the difference between the two cases.
 Mr. Van Santvoord, one of the counsel for the plaintiff in error, thus noticed the point:We are to show, therefore, that the propriety in the soil under the navigable waters of New Jersey, passed to the Duke of York and his grantees, and that it passed not as one of the regalia of the crown, or as a concomitant of government, but as an absolute proprietary interest, subject, it is true, to every lawful public use; but not the less on that account a hereditament, and the subject of lawful ownership and of the right of full and unqualified possession when that public use shall have ceased.
 In examining the question it will be necessary, first, to remove an obstacle which is encountered at the very threshold of the discussion. It is contended, and the circuit judge so charged the jury, that the matter is already res adjudicata, and that the decision in Martin and others v. Waddell involves the very point in controversy. If this be so, the discussion, of course, is at an end. For though a decision like that of Arnold v. Mundy, 1 Halst. 1, in a State court is not conclusive, yet an adjudication by this court of the very subject-matter of the controversy is; and we are not at liberty to question it, or permitted to look beyond the rule and the decision in the particular case for the reason upon which such decision is founded.
 We contend, then, that the question presented by the present case was not necessarily involved, and certainly not passed upon, in Martin v. Waddell, nor was it in Arnold v. Mundy. Our claim is perfectly consistent with the actual decisions in both cases, and is even fortified by those decisions. I shall, therefore, briefly consider what was really decided in Martin v. Waddell, and point out the distinction between that and the present case. And,
 First. This is an ejectment for lands reclaimed from the bed of a navigable river, and in the actual possession of the defendant as building lots. Martin v. Waddell was an ejectment for lands still under water, in the constructive possession of the defendant as a fishery.
 Ejectment is a possessory action, and the suit is brought to recover the possession, in the one case of the fishery, or the use of the land, in the other case of the land itself.
 Second. In Martin v. Waddell, the only possession of which the locus in quo (being then under water) was susceptible, was in its capacity of a public easement, or highway for navigation, or for fishery, and their correspondent uses. The only possession withheld by the defendant, and claimed by the plaintiff, was the use of the locus in quo as a fishery. The decision in that case was, that the plaintiff was not entitled to such possession, because he had not an exclusive right to such use or possession; but the question of the ultimate fee in the soil, or jus proprietatis, was not involved.
 This position may be illustrated by supposing the possession claimed by the plaintiff, and withheld by the defendant, to have been the exclusive use of the soil and waters for navigation. The defendant being in possession by his boats, rafts, &c., the plaintiff seeks to oust him by an ejectment; and must fail, for the same reason that he failed in Martin v. Waddell, because navigation being a jus publicum, the defendant had a right, in common with every other citizen, to be there. But no one will pretend that such a decision would carry with it the more important one, in respect to the fee of the soil. So in Martin v. Waddell, the franchise of fishery is elevated into a jus publicum, and placed upon the same footing with navigation. The plaintiff, by an ejectment, can no more be put in exclusive possession of it, than he could of an exclusive right of navigation in a public river, because it is not susceptible of ownership.
 Third. It makes no difference that the action was technically brought for the land under water. The sole and only controversy was in respect to the claim set up by the plaintiff's lessor of an exclusive right of fishing, and nothing else was passed upon in the case. Ejectment cannot be brought for a fishery eo nomine; but if a fishery be claimed, the action must be brought for the land covered with water. Thom. Co. Litt. p. 200.
 Thus, also, ejectment will not lie for a watercourse, but the ground over which the water passes, being deliverable in execution, upon which an entry can be effected, may be recovered in this action. Challoner v. Thomas, Yelv. 143; see also Jackson v. Buel, 9 Johns. 298; Jackson v. May, 16 Johns. 184.
 It was formerly held that a franchise of fishery, being an incorporeal hereditament, and not susceptible of delivery, could not be recovered in ejectment, (Cro. Jac. 144, Cro. Car. 492); and it is now only upon the assumption that a fishery is a tenement, and may be delivered in possession, that an ejectment will lie to recover it. Saund. Pl. & Ev. 981.
 Fourth. These distinctions were taken and strongly urged in Martin v. Waddell by the counsel who argued the case against the proprietors. He says:
 'The plaintiff, to recover, must maintain two positions,——
 1. That he has a possessory title to the premises in question, the soil of this navigable river. And,
 2. That there was not a common right of fishery in the people at large in the premises in question.'
 He must maintain both positions. A mere title to the soil would not enable him to recover. It must be a possessory title, and that, too, to the exclusion of every other right of possession, including the common right of the people at large to use the locus in quo as a fishery. Accordingly, in another part of his argument, the counsel remarks: 'A question has arisen whether the King of England can grant the soil of the sea and its arms, so as to destroy or prejudice public rights. Not considering this question at all material to the main argument, I have purposely left it out.' The question, therefore, of the title to the soil was not presented by counsel, or passed upon by the court.
 Fifth. That it was the use of the water as a fishery, and not the title to the land, that was in question, is manifest also from the opinion of the court. 'It appears,' says the Chief Justice, 'that the principal matter in dispute is the right to the oyster fishery in the public rivers and bays of East New Jersey.' Justice Thompson, in his dissenting opinion, attempts, indeed, to show that it was the use of the land, and not of the water as a fishery, that was in controversy, making a distinction between fishing for floating fish, and dredging for oysters, but this view was not concurred in. 'Should it be admitted,' he says, 'that the right to fish for floating fish was included in this public right, it would not decide the present question,' that is, the propriety in the soil. The whole argument goes to show, as was stated by the counsel for the State, that the question presented was not as to the power of the king 'to grant the soil, so as to give an individual the right to take it after its character had been changed by alluvion, wharfing out, &c.;' but the power of the king 'to grant it, so as to vest in an individual the soil, and divested of all common use before the change takes place.' If, therefore, the right to fish for both shell-fish and floating fish be such 'common use,' as was held in that case, the present question remains still untouched.
 Sixth. The actual decision in the case of Martin v. Waddell, as I have endeavored to show, establishes nothing more than this, namely, that the particular right or claim in controversy—the possession of an oyster fishery—could not be recovered in an action of ejectment, because an oyster fishery, like every other fishery in navigable waters, was a part of the jure regalia—a royalty—a necessary attribute of government, and, as such, did not pass under the grant as private property, but became disconnected from the proprietary interest, and passed out of the crown with the surrender of government to Queen Anne. If there be any thing else in the opinion delivered in that case, it is not conclusive or binding as authority. But we contend that there is nothing in that opinion which goes further than this; for though it does not, in express terms, discriminate between the 'dominion and propriety in the navigable waters, and in the soils under them,' but connects them together, yet the whole scope of the argument seems to show that it was the franchise of fishery alone which Chief Justice Taney held had passed 'as a part of the prerogative rights annexed to the political powers conferred on the duke;' and that the question of the ultimate fee, or propriety in the soil, subject to the public use, was not considered as influencing the decision.
 And lastly—When it is said, in the opinion of the court, that the navigable waters and the soils under them passed as a royalty incident to the forms of government, 'to be held in the same manner and for the same purposes that the navigable waters of England, and the soils under them are held by the crown,' the whole question as to what is properly the domain of the crown, which is alienable as a private interest to a subject, and what is the common property which is inalienable, save as a trust necessarily incident to government, is left open, except so far as that it is undoubtedly decided by the case in question, that the waters of a public river in respect to their use, including the public right of fishery in all its branches, is a part of this common property and is inalienable. This was precisely the point taken and the decision made in Arnold v. Mundy, 1 Halst. 1.
 We maintain, then, that the soil under navigable waters, disconnected from its public use, is part of the domain of the crown. And this leads at once to the main point in controversy.
 The locus in quo, a portion of the bed of the Hudson river, passed to the Duke of York and his assigns, not as a royalty annexed to the political powers conferred upon the duke by the patent, but as an absolute propriety in the soil, subject to the public uses of navigation, &c., and also, subject to the public right of fishery, and every thing necessarily incident to such right. This might, and perhaps would include the right of anchorage, the right to erect wharves, docks, &c., and every other use of the soil necessary to facilitate commerce and render the navigable water serviceable as an easement or public highway; as well as the right to make every proper use of the soil for the purposes of fishery, not inconsistent with the regulations of the sovereign power, in this case the State, in respect thereto. If this proposition can be successfully maintained, the proprietary title is established, and the right of the plaintiff to recover must be admitted.
 This is the main, and indeed it may be said the only, question presented by this case; and I propose to discuss it with a specific reference to the decision in Martin v. Waddell; yielding as I do to that decision an unqualified assent.
 Let us set out with the undeniable proposition conceded in the case of Martin v. Waddell, and as expressed in the prevailing opinion of the court, that the 'right of the king to make this grant with all its prerogatives and powers of government, cannot, at this day, be questioned.' That is, the entire grant—the proprietary interest, and the powers of government, together with the royalties necessarily incident and annexed to the powers of government. They all passed to the duke and his heirs and assigns in the same manner as they were held by the king himself, and of course the twenty-four proprietors so held them. Nothing, either of property or dominion in New Jersey, remained in the king.
 The important question then arises, and the question which must be decisive of this case, how and in what capacity, under the Constitution and laws of England, were lands under navigable waters, either in public rivers or arms of the sea, held by the king, and what was his power over them? Were they held as a proprietary and alienable interest, the subject of an exclusive possession as the proper domain of the king when the public servitude had ceased? Or were they held by the king in the capacity of trustee merely for the public, and, like the franchise of fishery, &c., inalienable by grant or otherwise from the king to a subject to be held as private property?
 Chief Justice Taney very properly and truly remarks, in Martin v. Waddell, that, 'in deciding a question like this, the laws and institutions of England, the history of the times, the object of the charter, the contemporanous construction given to it, and the usage under it, for the century and more which has elapsed,—are all entitled to consideration and weight.'
 Pursuing precisely this course, let us examine the question in the same way, namely:
 1st. By the laws and institutions of England.
 2d. By the history of the times.
 3d. By the objects of the charter, the contemporanous construction given to it and the usages under it, &c., &c., &c.
 The counsel for defendants in error thus stated the point.
 Sixth Point. That the Supreme Court of New Jersey and the Supreme Court of the United States, have both expressly decided that the Board of East Jersey Proprietors, the grantors in this case, under whom Russell claims title, had no right or title to, and could not grant the soil under tide waters bounded by the shores of New Jersey. The plaintiff's title, or proprietary title, in this case, is precisely the same as in Arnold v. Mundy and in Martin v. Waddell's Lessee. In this case the position of the defendants is stronger, as they are riparian owners, and have wharfed out from their own lands, under the express authority of the act of the legislature incorporating them. Arnold v. Mundy, 1 Halst. 1; Martin et al. v. Waddell's Lessee, 16 Peters, 369.
 Mr. Chief Justice TANEY delivered the opinion of the court.
 
 
 1
 This is an action of ejectment brought by the plaintiff in error against the defendants in the Circuit Court for the district of New Jersey, to recover a parcel of land situate in Jersey City. The land in question has been reclaimed from the water, by the defendants, under the authority of the legislature; and is now in their possession, and occupied by them as building lots.
 
 
 2
 The plaintiff claims the premises under sundry mesne conveyances from the Proprietors of East New Jersey, and the title of the proprietors is the point in question. And they claim that, by virtue of the various grants by which they became proprietors of East New Jersey, the fee of the soil under the navigable waters of that part of the State was conveyed to them, as private property subject to the public use; and as that use has ceased in the premises in question, they are entitled to their exclusive possession.
 
 
 3
 It is not necessary to state particularly the charters and grants under which they claim. They are all set out in the special verdict in the case of Martin v. Waddell, reported in 16 Pet. 367. The title claimed on behalf of the proprietors in that case was the same with the title upon which the plaintiff now relies. And upon very full argument and consideration in the case referred to, the court were of opinion that the soil under the public navigable waters of East New Jersey belonged to the State and not to the proprietors; and upon that ground gave judgment for the defendant. The decision in that case must govern this.
 
 
 4
 The counsel for the plaintiff, however, endeavor to distinguish the case before us from the former one, upon the ground that nothing but the right of fishery was decided in Martin v. Waddell; and not the right to the soil. But they would seem to have overlooked the circumstance that it was an action of ejectment for the land covered with water. It was not an action for disturbing the plaintiff in a right of fishery; but an action to recover possession of the soil itself. And in giving judgment for the defendant the court necessarily decided upon the title to the soil.
 
 
 5
 It is true, the defendant claimed nothing more than the exclusive right of planting and growing oysters on the soil for which the ejectment was brought. The special verdict found that he was in possession under a law of New Jersey, which gave him the exclusive privilege of planting and growing oysters, on the premises in question upon the payment of a certain rent to the State. The principle question therefore in dispute between the parties in that suit, and indeed the only one of any value was the oyster fishery. But the right to the fishery depended on the right to the soil upon which the oysters were planted and grown; and if the plaintiff could have shown that the proprietors, under whom he claimed, were legally entitled to it, the judgment of the court must have been in his favor.
 
 
 6
 Nor do we see any thing in the opinion delivered on that occasion, in relation to the rights of fishery, further than they contributed to illustrate the character and objects of the charter to the Duke of York; and to show that the soil, under public and navigable waters, was granted to him, not as private property, to be parcelled out and sold for his own personal emolument; but as a part of the jura regalia with which he was clothed, and as such was surrendered by the proprietors to the English crown, when they relinquished the powers of government, and consequently belonged to the State of New Jersey when it became an independent sovereignty.
 
 
 7
 There being nothing in the title now claimed for the proprietors, to distinguish this case from that of Martin v. Waddell, it is not necessary to examine the other and further grounds of defence taken by the defendants.
 
 
 8
 The judgment of the circuit court must be affirmed with costs.
 
 Order.
 
 9
 This cause came on to be heard on the transcript of the record from the Circuit Court of the United States, for the District of New Jersey, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged, by this court, that the judgment of the said Circuit Court, in this cause, be, and the the same is hereby, affirmed, with costs.