## *PATTERSON .v. ROUSNEY.

No. 4233.   Opinion Filed July 11, 1916.

(159 Pac. 636.)

LIMITATION OF ACTIONS—Limitations Applicable—What Law
Governs. Where a promissory note executed and payable
in the Indian Territory was subjected to the running of the
statute of limitation, as contained in section 4483, Mansfield's
Digest, Statutes of Arkansas, for a period of time prior to the
erection of the state, an action was instituted thereon after the
admission of the state into the Union in the courts of this
state. Held, that the cause of action on said note was govern-
ed, as to the length of time necessary to constitute a bar there-
to, by section 4483, Mansfield's Digest, and not by the laws of
Oklahoma Territory extended over the state by the Constitution.

(Syllabus by the Court.)

*Error from District Court, Ottawa County;*
*Preston S. Davis, Judge.*

Action by D. W. Rousney against M. L. Patterson.
Judgment for plaintiff, and defendant brings error. Re-
versed.

*W. H. Kornegay,* for plaintiff in error.

*O. F. Mason, Gray Carroll, H. D. Mason, C. S. Walker,*
*Rem'ngton Rogers,* and *Horace Speed,* for defendant in
error.

HARDY, J.   Defendant in error, who was plaintiff
in the trial court, commenced this suit on the 21st day
of July, 1911, against plaintiff in error, as defendant, on
a promissory note that had then been past due since De-
cember 11, 1905, which was almost two years before the
admission of the state into the Union, and which had
been subjected to the running of the limitation prescribed

by section 4483, Mansfield's Digest of the Statutes of Arkansas. The trial resulted in a verdict for plaintiff, under instructions that notwithstanding plaintiff's cause of action had accrued more than five years before action was commenced, the same was not barred upon the theory that the Oklahoma statute of limitations was applicable thereto and was not retrospective in its operation, and that the period prescribed by section 5550, Comp. Laws 1909 (section 4657, Rev. Laws 1910), should be computed from the date plaintiff's cause of action was first subjected to the operation of said statute.

The preamble to the Schedule of the Constitution is as follows:

"In order that no inconvenience may arise by reason of a change from the forms of government now existing in the Indian Territory and in the Territory of Oklahoma, it is hereby declared as follows:

"Section 1. No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place. * * *

"Sec. 2. All laws in force in the Territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution and which are not locally inapplicable, shall be extended to and remain in force in the State of Oklahoma, until they expire by their own limitation or are altered or repealed by law."

The functions of the Schedule were considered by this court in *Arie v. State*, 23 Okla. 166, 100 Pac. 23, and it was there said:

"To determine the meaning of this provision of the Schedule and the intention of the framers it would not be

amiss to consider what the office of a schedule is. It is a temporary provision for the preparatory machinery necessary to put the principles of government under the Constitution in motion without disorder or collision, not to control the principles of the organic law or to limit the same where it may be in conflict therewith, but to carry the whole into effect without break or interval; to shift the machinery gradually into another track, and having done its office, it is stowed away in the lumber room of the government."

This seems to be a clear statement of the purpose and intention of the framers of the Constitution in inserting same therein: That is, to avoid the confusion and collision that would be occasioned by a sudden transition from one form of government to another and by a substitution of a full set of laws for those in existence. So the Schedule provided that existing rights, actions, suits, proceedings, contracts, or claims should not be affected, but should continue as if no change in the form of government had taken place. The effect of the Schedule was not to enact or re-adopt the laws of Oklahoma Territory for the state in the sense that a law is enacted when passed by the Legislature, or adopted from another jurisdiction, but, on the contrary, said laws, being already in force in Oklahoma Territory, were to remain in force in that portion of the state as if no change in the form of government had taken place, without in any way affecting existing rights, actions, suits, proceedings, contracts, or claims by reason of the change, and were to be extended to that portion of the state formerly known as the Indian Territory, with a like provision that rights, actions, suits, proceedings, contracts, and claims on that side of the state should not be affected thereby, but should likewise continue as if no change in the form of government there-

tcfore existing in that part of the state had taken place.

In *Frick Co. v. Oats et al.*, 20 Okla. 437, 94 Pac. 682, in construing section 2 of the Schedule and section 21 of the Enabling Act considered together, it was held that on the admission of the state into the Union the laws in force in the Territory of Oklahoma at that time "remained in force," and were not adopted from anywhere, and after citing the case of *State v. Ellis et al.*, 22 Wash. 129, 60 Pac. 136, construing a similar provision in the Schedule of the Constitution of the State of Washington, the court said:

"If, then, article 27, sec. 2, of the Constitution of Washington, which provides as follows: 'That all laws which are now in force in the Territory of Washington which are not repugnant to the Constitution, shall remain in force until they expire by their own limitation, or are repealed by the Legislature'—could not be construed as re-enacting a statute, as all the force it had was to continue in force all valid laws which were then in existence, we must conclude that the part of our schedule which is practically the same in substance and reads: 'Section 2. All laws in force in the Territory of Oklahoma at the time of the admission of the state into the Union which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the State of Oklahoma until they expire by their own limitations, or are altered or repealed by law'—is entitled to a like construction, that 'All laws in force in the Territory of Oklahoma, on the admission of the state into the Union, * * * shall be extended to and remain in force,' upon the admission of the state into the Union. Clearly these laws cannot be said to be adopted or re-enacted from anywhere, but were already 'in force.' "

It cannot be doubted, in view of these decisions, that all rights, actions, suits, proceedings, contracts, and claims were intended to be preserved and to continue the same as

if no change in the form of government in either portion of the state had taken place. The plaintiff's right, contract, and claim in the present case existed prior to statehood, when Mansfield's Digest was in force and it was intended that it should remain in effect by the change in the form of government.

In *Blanchard & Co. v. Ezell,* 25 Okla. 434, 106 Pac. 960, the plaintiff was a copartnership which existed prior to statehood, and was engaged in the mercantile business in the Indian Territory, and continued in said business after the admission of the state. Prior to statehood the defendant became indebted to plaintiff on a promissory note. After statehood action was brought thereon, and the defendant contended that section 3901, Wilson Rev. & Ann. Stat. 1903, requiring partnerships engaged in business under a fictitious name or designation, not showing the names of the partners, to file with the clerk of the district court a certificate showing the names in full of all members of such partnership and their places of residence, and to publish the same for four succcessive weeks in a newspaper published in the county, was applicable, and it was contended that, because plaintiff had failed to comply with the statute, it was not entitled to recover. The court denied this contention, placing its decision upon the ground that the Schedule preserved the existing right to maintain an action thereon, and that the right was not affected by the change in the form of government. After quoting section 1 of the Schedule the opinion proceeds:

"The purpose of this section of the Schedule is to preserve all rights already accrued and either in action or capable of being enforced by the ordinary remedies provided for this purpose, as effectively as if the Constitution had not been adopted. The language is broad enough to include all rights and claims whatever their nature. No

distinction is made between statutory rights and those existing at common law, nor between those arising out of torts and those founded upon contract. As the firm under the laws of the Indian Territory prior to statehood had a right to recover on its promissory note, either in the courts of the Indian Territory or Oklahoma Territory, this right continued after statehood and was not affected by the foregoing sections of the Oklahoma statutes."

In *M., K. & T. Ry. Co. v. Hancock & Goodbar,* 26 Okla. 265, 109 Pac. 223, action was brought to recover certain damages caused by negligence of the company in transporting certain shipments of beef steers from Welch, Indian Territory, to Kansas City, Mo., about November 7, 1909. The company urged in defense of the action a contract containing a stipulation that as a condition precedent to the right of recovery, the shipper should, within 60 days after the happening of the injuries complained of, file his claim for damages, and a further stipulation that no suit should be brought against the carrier after the lapse of 90 days from the happening of the injury. Claim was not filed within 60 days nor suit commenced within 90 days. It was contended that as the action was not commenced until after statehood, said provisions were void as being in contravention of section 9, art. 23, of the Constitution, providing that any provision of any contract or agreement stipulating for notice or demand other than such as may be provided by law shall be null and void. This provision of the Constitution was held not applicable thereto, and, further, that said stipulation was valid and operated as a limitation of the time in which action should be brought, though brought after statehood.

In *Western Union Telegraph Co. v. Hollis,* 28 Okla. 613, 115 Pac. 774, action was commenced after statehood to recover damages for delay in the transmission of a tele-

gram. The company pleaded in defense of the action a stipulation on its printed forms that the company should not be liable for damages or statutory penalties growing out of said contract where the claim was not presented within 60 days after the message was filed for transmission, and it was held that said provision was valid and the company was entitled to urge same in bar of the suit notwithstanding the action was begun after statehood.

In *Summers v. Alexander,* 30 Okla. 198, 120 Pac. 601, 38 L. R. A. (N. S.) 787, action was commenced in the justice court after statehood upon two promissory notes. The defense was that the notes were obtained by misrepresentation. It was held that as the transaction occurred prior to statehood, the rights of the parties were to be determined by the law then in force, and those rights were continued by section 1 of the Schedule.

In *Turk v. Mayberry,* 32 Okla. 66, 121 Pac. 665, judgment was rendered in mayor's court of Purcell prior to statehood and appeal prosecuted to the United States Court for the Southern District of Indian Territory. The case was thereafter transferred to the district court of McLain county, which latter court dismissed the appeal. On April 18, 1908, the judgment of the mayor's court was placed on the judgment rolls of the district court and execution issued and levied upon certain real estate in the city of Purcell, which was advertised and sold, and one of the questions presented was whether on a judgment rendered prior to statehood a judgment debtor had a right to redeem property sold under execution after statehood. Execution was not issued nor the property sold until after statehood, and thus was presented squarely the question whether the right to redeem was an existing right preserved by the Schedule. The court said·

"We therefore conclude that the right of redemption under execut.on sale of land, upon process issued since statehood. on judgments rendered prior to statehood, remains in the judgment debtor, and that the change of law at the time of the adoption of the Constitut'on did not affect this right, and that the confirmation of the sale in this case prior to the expiration of the time allowed by the law, in force at the time of judgment, for the exerc'se of the right of redemption, was prejudicial to that right."

A comparison of the statutes in force in the Indian Territory and those extended over the state is not amiss. The period of limitation prescribed by Mansfield's Digest on promissory notes was five years, being the same as that prescribed by the Oklahoma statutes. Actions upon judgments were required to be brought within ten years, while by the Oklahoma statutes the period in which actions could be brought upon foreign judgments was limited to one year, so in actions upon writings under seal the time was placed at ten years, while by the Oklahoma law the time was reduced to five years. In actions upon the bonds of executors and administrators, the time was fixed at eight years, and same was placed by the Oklahoma statute at five years. Actions on penal statutes were required to be commenced within two years, while the period under the Oklahoma law was one year. In actions for trespass upon real estate, the former period was three years, while it was changed to two years; and for taking or injuring personal property actions formerly had to be commenced within three years, while the time limit was changed to two years; and actions of forcible entry and detainer might be begun within three years, while the time is now limited to two years.

Under Mansfield's Digest persons to whom a right of action accrued while under disability, such as minority,

coverture, etc., had the same period of time after the disability was removed as was fixed by the statute, in which to commence actions, which might in some cases be ten years, while under the Oklahoma statutes the time was limited to one year after the removal of disability.

In the instance given where the time is materially shortened the right has been affected. The fact that defendant is urging this question does not bring about a different situation. If plaintiff had lost in the trial and was here urging error, the question would be squarely presented. Having won, the defendant is entitled to present the question whether section 4483, Mansfield's Digest, applies, and, if so, whether the time fixed thereby had run, and plaintiff's right of action was barred. If we are right in construing the provisions of the Schedule to mean that existing rights, actions, suits, proceedings, contracts, and claims shall continue to exist, free from the defense of limitation, for the same length of time prescribed by the statutes in force prior to the adoption of the Constitution, it would follow that upon the expiration of that time, an action based upon any such right, contract, or claim would be subject to such defense, and this being true, the defendant would be in position to urge that defense when the time prescribed by the law then in force had run; that is, if the statutes in force in the Indian Territory be the governing statutes, then the period prescribed thereby had run at the time this action was instituted, and defendant would be entitled to plead such statute in bar of plaintiff's action.

If the statutes of limitation of Oklahoma Territory be held applicable to existing rights, contracts, and claims on the date of statehood, and be given a retrospective operation, the time thereby prescribed in many instances would

already have expired, and thus the right of action thereon be destroyed. Such a construction would render the statutes inoperative and unconstitutional as to such rights, contracts, or claims. *Murray v. Gibson*, 15 How. 426, 14 L. Ed. 757; *Sohn v. Waterson et al.*, 17 Wall. 596, 21 L. Ed. 737.

If such statutes be held to apply and to fix a new period from which the time fixed thereby should begin to run as to existing rights, contracts, or claims, the time in many instances would be so materially shortened as to be unreasonable, and thus would be presented a difficulty almost insurmountable in requiring the court to determine what was or was not a reasonable time in which to begin suit, in each particular case. *Koshkonong v. Burton*, 104 U. S. 668, 26 L. Ed. 886.

That the right of action continues after statehood is not controverted, but it is contended that the laws of Oklahoma apply and the period of limitation begins to run from the date of statehood, and that plaintiff was entitled thereafter to the period prescribed by said statute to commence his action. To determine the correctness of this proposition it is necessary to ascertain the meaning of the preamble and the provisions of the Schedule heretofore quoted. Oklahoma Territory was an organized form of government with a highly developed citizenship and a system of laws of its own materially different from those in existence on the East Side. On the Indian Territory side there existed five separate and distinct semidependent political communities known as the Five Civilized Tribes, with separate and distinct forms of government and customs and laws widely divergent from each other and from those in existence on the West Side; and there was also a large element of the population composed of non-

citizens who had been permitted to settle in the Indian
Territory and for the regulation of whose conduct certain
laws of Arkansas as contained in Mansfield's Digest had
been extended over and put in force in that territory. In
addition thereto certain general statutes of the United
States had operation therein. The people on each side of
the state were familiar with the laws in force and had
regulated their conduct in accordance therewith, and it
was recognized that a sudden change of the law, if per-
mitted to affect existing rights, actions, proceedings, con-
tracts, and claims, would bring about confusion and un-
certainty. The people on that side of the state formerly
known as Oklahoma Territory knew their rights under the
contracts they had entered into in conformity with ex-
isting laws, and under those laws the payee of a note
knew he would have a right to institute an action thereon
at any time within five years from the date of its maturity,
and it was expressly enacted that this right should con-
tinue as if no change had taken place in that portion of
the state; and in *Frick Co. v. Oats et al., supra,* it was held
that the laws of Oklahoma Territory remained in force
and were not re-enacted or re-adopted, and it follows did
not renew existing rights or fix a new period from which
the statute commenced to run, and thus the right to in-
stitute suit on a cause of action of this character on the
Oklahoma Territory side of the state continued as if no
change had taken place in the form of government. The
same provision was applicable to the Indian Territory,
and is expressly made so by its language. The plaintiff
knew when this note matured that his right to institute
suit thereon would continue for a period of five years,
had no change occurred, and he knew when the Constitu-
tion was adopted that under the provision of the Sched-

ule his right to institute suit thereon would remain as if no change in the form of government had taken place; that is, it was continued for the length of time it would have continued without such change, to wit, five years from the date it first accrued. This was true on the Oklahoma Territory side, and no good reason can exist and none does exist why a different rule should apply on the Indian Territory side of the state.

Webster defines the word "continue" to mean:

"(2) To protract or extend in duration; to preserve or persist in; to cease not; (3) to carry onward or extend; to prolong or produce; to add to, or draw out n length, duration, or development; (4) to retain, suffer, or cause to remain."

Giving the word "continue" the meaning ascribed thereto by Webster, it means that the right to institute an action upon an existing right, contract, or claim shall remain or extend or be prolonged the same length of time as if no change had taken place. Had no change taken place the plaintiff's right to institute suit upon the note would have been extended, continued, or prolonged for a period of five years from the date it matured, and this construction gives harmony and symmetry to the Constitution, effects the change without confusion, and brings about a result that is just, equal, and right. We are not without legal definition of the word "continue" to support us in this view. In *Williams, Adm'r, v. United States*, 154 U. S. 648, 14 Sup. Ct. 1188, 25 L. Ed. 309, a surgeon in the Continental Army who accepted an appointment in the new regiment of guards authorized by the resolution of January 9, 1799, was held "not to continue in service until the end of the war," within the meaning of the resolution of Congress under which the claim in that case was made,

for the reason that the service was not continuous but was interrupted and broken by his re-enlistment in another branch of the service.

In *Bridges v. Koppleman,* 117 N. Y. Supp. 306 (63 Misc. Rep. 27) the sixth paragraph of the syllabus is as follows:

"The word 'continue,' as used in Civil Code Procedure, sec. 26, providing that a special proceeding pending may be continued from time to time before one or more of the judges of the court, means to keep up, to protract or extend in duration, to extend, or prolong."

In *Engmann v. Estate of John Immel, Deceased,* 59 Wis. 249, 18 N. W. 182, in defining the word "continue" under a statute providing that payment upon an existing claim shall be sufficient evidence upon a new or continuing contract, it was said:

"The word 'continuing,' as here used, has the natural meaning of perpetuating, protracting, or prolonging from one time to another."

It appears that the purpose of adopting the provisions of the Schedule is, as expressed therein, to declare that existing rights, contracts, and claims shall continue as if no change in the form of government had taken place; that is, they shall continue to exist and be capable of enforcement without being liable to be defeated by the plea of limitation for the same period of time they would have thus continued under the laws in force at the time the cause of action accrued.

The statutes of limitation of Oklahoma Territory extended over the state have been construed in former opinions of the territorial Supreme Court to be prospective in their operation, and to embrace within their terms existing rights of action, and were said to have the effect

of renewing such rights so that the full period of time in which to institute suit thereon would run from the time the cause of action was first subjected to their operation. This was true because when the Statutes of 1893 were adopted they were held to effect a repeal of the statutes theretofore in force. *Southgate v. Frier,* 8 Okla. 435, 57 Pac. 841; *Huber v. Zimmerman,* 8 Okla. 573, 58 Pac. 737; *Fuller v. Johnson,* 8 Okla. 601, 58 Pac. 745.

The statutes having been construed as prospective in their operation, they must still be given that effect and cannot be construed as retrospective. This is so because the laws were not re-enacted or re-adopted, but merely remained in force as if no change had taken place, and therefore did not renew existing rights of action nor fix a new period from which the statute should begin to run in the west part of the state. They must be given a like construction on the east side of the state and held not to fix a new period from which the statute begins to run, because any other construction would render them obnoxious to the uniformity clause of the Constitution. Not being retrospective on the West Side, they cannot be retrospective on the East Side. *Anderson v. Ritterbusch,* 22 Okla. 761, 98 Pac. 1002.

This construction is in harmony with well-established rules and violates no precedent. Indeed no precedent exists upon a similar state of facts, for to our knowledge there has not heretofore been presented to the courts a similar situation to that we are considering, and therefore precedents can only be persuasive so far as by analogy they are like the present situation, and so far as their reasoning may be applicable and convincing. A standard rule of construction applied to statutes of limitation is

stated by Mr. Wood in his work on Limitations, sec. 11, p. 38, as follows:

"Another rule in reference to all statutes is that they are to be so construed as to have a prospective effect merely and will not be permitted to affect past transactions, unless such intention is clearly and unequivocally expressed."

And in support of this rule he cites many authorities. The Supreme Court of the United States in *Murray v. Gibson*, 15 How. 421, 14 L. Ed. 755, stated the same rule in the following language:

"As a general rule for the interpretation of statutes, it may be laid down that they never should be allowed a retroactive- operation where this is not required by express command or by necessary and unavoidable implication. Without such command or implication they speak and operate upon the future only. Especially should this rule of interpretation prevail where the effect and operation of a law are designed, apart from the intrinsic merits of the rights of parties, to restrict the assertion of these rights."

In the face of the previous decisions of the territorial court and of the general rule for construction above stated, this court cannot give said statutes a retrospective operation so as to make them relate back and operate upon causes of action existing prior to statehood on the east side of the state. Neither is the court justified in holding that the statutes in one portion of the state have the effect of supplanting other statutes then in existence and fixing a new period from which the time limit shall begin to run.

Section 2 of the Schedule declares that the laws of Oklahoma Territory are extended over and shall remain in force in the state which are not repugnant to the Con-

stitution or locally inapplicable. The preamble and section 1 declare that such laws shall not affect existing rights, actions, suits, proceedings, contracts, or claims, and this operates as a modification of the statutes of limitations so extended to the extent that they are not permitted to bring within their terms existing rights of actions, contracts, or claims; but permits them to continue as if such laws had not been extended to that portion of the state.

Section 59, art. 5, of the Constitution (section 148, Vm. Ann.) declares:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

This constitutional provision operates upon all laws extended over and put in force in that portion of the state formerly known as the Indian Territory, and for such laws to have such uniform operation, it is necessary that they shall affect alike all persons and localities of the state brought within their terms; that is to say, the period of limitation provided by the act in question must be the same upon like rights, contracts, and claims in each portion of the state, and in all other ways the operation of said laws must be uniform; to be more specific: If the period of limitation upon a contract or claim were five years from the date it first accrued on the Oklahoma Territory side of the state, five years must be the period of limitation on the Indian Territory side.

It is true in the present case the time prescribed in the Indian Territory was five years, and a like period was prescribed by the statute in Oklahoma Territory, and it may be said the distinction is of no importance. If the Oklahoma statute be held to apply and to fix a new period.

from which the statute would commence to run, it would have the effect of prescribing a longer period in which action might be brought in the present case than would accrue to the payee of a note maturing on the same date in what was formerly Oklahoma Territory, and thereby said laws would not be uniform in their operation. To further illustrate: If a debtor on the east side had executed his note maturing four years before the date of statehood and a debtor on the west side had executed his note maturing on the same date, had no change in the form of government taken place, the right of the respective payees to institute suit would have continued, and expired on the same date in each instance; but if the other view be taken, the period of limitation in Oklahoma Territory would have been five years, as provided by statute, while on the Indian Territory side it would have been nine years, which would clearly make the statute with this construction obnoxious to the uniformity clause of the Constitution.

Another complication may be illustrated thus: Had the debtor living on the Oklahoma Territory side continued to reside there until the bar of the statute had fallen and then moved to the Indian Territory side, the cause of action would not have been renewed, but the bar having once attached could be availed of at any point within the state. On the other hand, had the debtor living on the east side continued to live there until the period of five years had run, and then moved to the west side, he would not be entitled to plead the bar of the statute. The statute of limitations for certain classes of actions concerning real estate in the Indian Territory was seven years, while in Oklahoma Territory it was fifteen years. Should the statute applicable thereto be construed as the trial court did in this case, it would result in this situation:

Where plaintiff's cause of action had accrued six years and 11 months prior to statehood in the Indian Territory, should the right continue as if no change in the form of government had taken place, it would be barred within seven years from the date it first accrued; while taking the other view, it would be extended for a period of 15 years, thus making the period of limitation in effect 23 years, while a like cause of action accruing on the same date in Oklahoma Territory would be barred in 15 years. It was to avoid such conditions as these and those heretofore pointed out that the Schedule declared that existing rights, actions, suits, proceedings, contracts, and claims should continue as if no change had taken place.

The question here is not like that presented in cases involving matters of procedure merely. The right of action had accrued and was in existence and was to be protected and continued the same as if no change had taken place. In actions commenced before statehood the rights of the parties to existing procedure was preserved by the same provision of the Schedule. No right had attached or vested to any specific mode of procedure prior to the time action was commenced, and therefore authorities of that nature are not controlling here.

The decision in *Theis v. Board of County Com'rs*, 22 Okla. 333, 97 Pac. 973, simply determined that section 3, art. 7, c. 28, p. 328, Sess. Laws 1905, providing that, "Such set-off or counterclaim shall not be barred by the statute of limitations until the claim of the plaintiff is so barred," only affected set-offs or counterclaims existing at the time of its passage, and did not revive a set-off already barred by a former statute.

The question in *Re Mosher*, 24 Okla. 61, 102 Pac. 705, 24 L. R. A. (N. S.) 530, 20 Ann. Cas. 209, was

whether the statute of limitations had run against certain acts alleged against an attorney in a disbarment proceeding, and it was held that the statute did not apply in cases of that kind.

In *Anderson et al. v. Kennedy et al.* (not officially reported), 152 Pac. 123, the question here presented was submitted, and in an opinion by the commission it was held that the statutes of limitation theretofore in force in Oklahoma Territory, which were by the Schedule extended to that part of the state formerly known as Indian Territory, applied to causes of action then existing and had the effect of renewing such existing rights. This statement of the law, in our opinion, is incorrect.

The judgment should be reversed.

KANE, C. J., and TURNER, J., concur. THACKER, J., concurs in the conclusion.

---

THACKER, J. I concur in the conclusion reached in the opinion of the court in this case; but I am unable to concur in the reasoning on which the same is based, and especially do I dissent from the holding that section 4483, Statutes of Arkansas of 1884, is the law of this forum in this case.

In discussing this subject the plaintiff in error will be designated as defendant, and defendant in error as plaintiff, in accord with their respective titles in the trial court.

The plaintiff commenced this action on July 22, 1911, against defendant for the principal sum of $600, besides interest and attorney's fees, which had then been past due since December 15, 1905, a period of five years, seven

months, and seven days; and the defendant's answer raised the question as to whether the same was barred by the statute of limitation.

The cause of action on this note for nearly two years was subject to the running of the five-year period of limitation prescribed by Mansfield's Digest of the Statutes of Arkansas of 1884, in force in the Indian Territory prior to statehood, at which time this note lacked a little more than three years of being barred.

The case was tried to a jury, and the trial resulted in a verdict for plaintiff under instructions that, notwithstanding plaintiff's cause of action on the note had originally accrued more than five years before the action was commenced, the same was not barred by any statute of limitation; and judgment was accordingly entered against defendant upon this verdict.

This instruction was evidently predicated upon the theory that the said Arkansas statute is not the law of this forum; that at the time of the admission of Oklahoma to statehood the defendant had acquired no vested right by virtue of the running of that statute for nearly two years which was preserved to him by section 1, art. 25 (Williams', sec. 365), in the Schedule of the Constitution of Oklahoma; that section 3890, Statutes of 1893 (section 4657, Rev. Laws 1910), is the law of the forum in this case and prescribes the only limitation the defendant would in any event be entitled to invoke; and that within the meaning of this last-mentioned statute the plaintiff's cause of action did not accrue until it became subject to the running thereof upon the admission of Oklahoma to statehood on November 16, 1907, so that under this statute the computation of the time from the commencement of this action

can extend no further back than that date and does not bar this action.

The questions presented in this case, as will be understood from the foregoing, are:   (1) Was section 4483 of Mansfield's Digest of the Statutes of Arkansas of 1884 brought forward as the law of this state in such cases, or did defendant acquire any right thereunder, by virtue of section 1, art. 25 (Williams', sec. 365), in the Schedule of our Constitution, so as to bar this action?   (2)   If not, and if section 3890, Statutes 1893 (section 4657, Rev. Laws 1910), is applicable, as the law of this forum, must the period of limitation be computed from the commencement of this action back to the original accrual of plaintiff's cause, that is, to December 15, 1905, or only back to its accrual or coming under the laws of the State of Oklahoma, that is, to November 16, 1907, when this cause of action first became subject to the statutes of limitation of this state?

The aforesaid section 4483, Statutes of Arkansas of 1884, reads:

"Actions on promissory notes, and other instruments in writing, not under seal, shall be commenced within five years after the cause of action shall accrue, and not afterward."

The aforesaid section 3890, Statutes 1893 (section 4657, Rev. Laws 1910), reads:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterward:

"First.   Within five years:   An action upon any contract, agreement or promise in writing."

The aforesaid section 1, art. 25 (Williams', sec. 365), in the Schedule of our Constitution reads:

"No existing rights, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but shall continue as if no change in the forms of government had taken place."

Before answering the above-stated questions, which are decisive of the instant case, a few general observations may be helpful to a clearer understanding of the discussion of the same and of the conclusions reached upon each of these questions.

It must be borne in mind that neither a plaintiff nor a defendant is denied or acquires any right whatever under any such statutes (which merely limit the remedy for the enforcement of rights not dependent upon the limiting statute) until the full period of limitation has run and the action is completely barred, nor then, except that adverse possession of real or personal property or of an easement in the former for the full period of limitation operates in effect to transfer the title to such possessor, unless (as, for instance, our own Constitution, sec. 52, art. 5, the same being Williams', sec. 142, and our own statutes, section 3894, Statutes 1893, the same being section 4661, Rev. Laws 1910) there is some constitutional or statutory provision giving such statutes of limitations the effect of barring or otherwise affecting the right of action contrary to the common law. In *Campbell v. Holt,* 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483, where the full period of a Texas statute of limitation had run against a personal debt and thereafter that statute was suspended by an amendment to the state Constitution, the Supreme Court of the United States held that the debtor acquired no right under such statute and therefore said subsequent

suspension deprived him of no right, and that said constitutional amendment left the plaintiff free to sue and recover against him just as if the full period of limitation had not run. This is merely well-settled law, usually expressed as, for instance, in Wood on Limitations (4th Ed.) sec. 1, p. 3, in something like the following form:

"The weight of authority now is that the statute of limitations as to personal actions affects only the remedy and does not extinguish the right. Statutes of limitations act on the remedy. They are designed to affect the remedy, and not the right of contract. They only apply to the remedy, without canceling the obligation."

In Angell on Limitations (6th Ed.) sec. 7, p. 4, the same principle is stated in the following form:

"Prescriptions may extend to remedies only, and be rather the means of exemptions from the servitude of an action than of the acquisition of a positive and absolute title. The statute 21 James I, applies only to remedies."

Also, see, Limitations and Adverse Possession, Buswell, sec. 1, p. 1.

Another proposition, which is closely related to the foregoing and equally well-settled, is that the law of the forum alone determines whether a personal action (unless a foreign statute has barred the right itself) is barred by limitation. In other words, the law of the present time and of the court in which the action is commenced, and not the law of any past time or other court, governs in determining questions of limitations in personal actions. In 1 Wood on Limitations (4th Ed.) sec. 8, pp. 31-36, this rule is stated as follows:

"It is well settled that personal contracts are to be interpreted by the law of the place where they are made; and it is a rule equally well settled that remedies on con-

tracts are to be regulated and pursued according to the law of the place where the action is instituted and not by the law of the place of the contract. The reason of this rule, according to Story, J., is obvious, and it is in conformity with the universal rule that, if the statute (of limitation) operates merely upon the remedy, the law of the forum and not the law of the situs of the contract controls. But, if the statute extinguishes the right itself, it may be set up as a bar to an action thereon whenever brought. This rule is forcibly illustrated in another way, and that is, that where by the laws of the forum a shorter period for the limitation of a claim is fixed than by the law of the situs of the contract, the statute of the forum will bar the claim if the party setting it up brings himself within it, although the statute of the place of contract has not run * * * and is distinguished as suggested in Story's Conflict of Laws, and as suggested in reference to the preceding rule, in cases where the right as well as the remedy of the claimant is barred by the law existing at the place of contract, this, however, is not perhaps a frequent case in regard to personal actions."

Also, see, Angell on Limitations, secs. 64-67, pp. 56-67.

The foregoing general observation brings us right down to the answer to the first question to be decided in this case, namely:

"Was section 4483 of Mansfield's Digest of the Statutes of Arkansas of 1884 brought forward as the law of this state in such cases, or did defendant acquire any right thereunder, by virtue of section 1, art. 25 (Williams', sec. 365), in the Schedule of our Constitution so as to bar this action."

It must be obvious from what has already been said that neither the plaintiff nor defendant had lost or acquired any right whatever under the Arkansas statute of limitations prior to statehood, and that if either one of

them since has lost or acquired any right under it it is because that statute was brought forward and has been running against plaintiff's remedy by action in court since statehood by virtue of said section 1, art. 25 (Williams', sec. 365), in the Schedule of our Constitution. No "right, contract, or claim" the plaintiff has was "affected" by the adoption of section 3890, Stats. 1893 (section 4657, Rev. Laws 1910), instead of section 4483, Statutes of Arkansas of 1884, as the law of this forum; and if the new statute had shortened the period within which he might have resorted to the courts for the enforcement of his "right, contract, or claim," such "right, contract, or claim" would not have been "affected," unless the time he had previously had in which to sue had been entirely cut off or unreasonably reduced, as such statutes relate only to the remedy—the plaintiff's "right, contract, or claim" would remain intact and enforceable by action at law within the period allowed by the new statute, and thereafter, in the absence of a statute under which the right itself would be lost, in any other available way, as, for instance, by applying any applicable funds he might have in hand belonging to the defendant to the satisfaction of the same.

The defendant had and is urging no "right," or "contract," or "claim" against the plaintiff's right of action on the note in question; and, in effect, he is simply saying here that plaintiff has lost his remedy for a breach of a contract by virtue of some statute of limitation. If at the time of statehood the full bar of the statute of Arkansas had expired and the plaintiff's right had been thus extinguished under the laws of the Indian Territory, it is clear that this section of our Constitution would have preserved to defendant the right to invoke that statute against plaintiff's remedy, so as to defeat his action; but as no right had ac-

crued to either the plaintiff or the defendant under the laws of the Indian Territory in respect to the limitation upon plaintiff's remedy by action at law against the defendant which could have been effected by a change from the territorial to a state form of government, there was nothing in the instant case to be preserved to defendant by that constitutional provision.

That, except as to pending "actions," "suits," and "proceedings," no prior remedy (that is, no means by which the violation of a right is prevented, redressed, or compensated) in the Indian Territory or elsewhere was brought forward or preserved by said section 1, art. 25 (Williams', sec. 365), in the Schedule of our Constitution, is too well settled to be open to discussion at this time. That, except as to pending "actions," "suits," and "proceedings," this section of the Constitution preserves only rights and not remedies will be seen from the following cases: *Independent Cotton Oil Co. v. Beacham,* 31 Okla. 388, 120 Pac. 969; *Chicago, R. I. & P. Ry. Co. v. Baroni,* 32 Okla. 540, 122 Pac. 926; *Chicago, R. I. & P. Ry. Co. v. Bankers' National Bank,* 32 Okla. 290, 122 Pac. 499; *Muskogee Vitrified Brick Co. v. Napier,* 34 Okla. 618, 136 Pac. 792; *McLeod v. Spencer,* 34 Okla. 647, 126 Pac. 753; *Farmers' State Bank of Ingersoll v. Wilson,* 34 Okla. 755, 127 Pac. 395; *Hillis v. Addle,* 35 Okla. 122, 128 Pac. 702; *Metropolitan Ry. Co. v. Fonville,* 36 Okla. 76, 125 Pac. 1125; *Mullen v. Glass,* 43 Okla. 549, 143 Pac. 679.

It follows that section 4483, Statutes of Arkansas of 1884, is not the law of this forum nor of this case, and that the defendant cannot here urge that statute in bar of plaintiff's action.

Section 3890, Statutes 1893 (section 4657, Rev. Laws 1910), which became the law of this state by virtue of

section 2, art. 25 (Williams', sec. 366), in the Schedule of our Constitution, prescribes the only limitation there is in this jurisdiction upon such causes of action, when the same were not completely barred by the statute of some other jurisdiction.

This brings us to the second and only remaining question in this case, namely:

"Must the period of limitation be computed from the commencement of this action back to the original accrual of plaintiff's cause of action, that is, to December 15, 1905, or only back to its accrual, or coming, under the laws of the State of Oklahoma, that is, to November 16, 1907, when the State of Oklahoma came into existence?"

Upon this question there is admittedly room for reasonable difference of opinion; but the better reasoning leads to the conclusion that time should be computed under this section of our statutes from the commencement of this action, that is, from July 22, 1911, back to the original accrual of plaintiff's cause of action upon this note, that is, to December 15, 1905.

It may be well to state at the outset of the discussion of this question that when a succeeding statute of limitation prescribes a shorter period than the prior statute prescribed, such a retrospective construction may result in barring at the instant that the new statute takes effect some unbarred cause of action theretofore accrued and thus affect a right or claim and so offend and to that extent fall against both the state and federal constitutional inhibitions against legislative impairment of obligations of contracts (which are rights), and, also, against deprivation of property (which is a right) without the due process of law. State Const. art. 2, secs. 7, 15 (Williams', secs. 15, 23); Fed. Const. art. 1, sec. 10, and Amendment

14, sec. 1; 6 Enc. U. S. Sup. Ct. 880-884; 5 *idem*, 589; 8 Fed. Stat. Ann. 868; 9 Fed. Ann. 553; *Sohn v. Waterson et al.*, 17 Wall. 596, 21 L. Ed. 737; *Koshkonong v. Burton*, 104 U. S. 668, 26 L. Ed. 886; *Milbourne v. Kelley*, 93 Kan. 753, 145 Pac. 816.

And it may be further stated here that, while the statute of limitations in force in the Indian Territory prior to statehood is identical with the succeeding statute in force in the State of Oklahoma in respect to the time allowed for commencement of actions in cases of this character, our statutes prescribe a shorter period in some instances for other classes of causes of actions.

In *Sohn v. Waterson*, 17 Wall. 596, 21 L. Ed. 737, where a Kansas statute of limitation practically identical in language with our own was considered and construed, the Supreme Court of the United States said:

"A statute of limitations may, undoubtedly, have effect upon actions which have already accrued as well as upon actions which accrue after its passage. Whether it does so or not will depend upon the language of the act, and the apparent intent of the Legislature to be gathered therefrom. When a statute declares generally that no action, or no action of a certain class, shall be brought, except within a certain limited time after it shall have accrued, the language of the statute would make it apply to past actions as well as to those arising in the future."

After thus stating that such statutes, construed literally, are both retrospective and prospective in their operation, that court approves the judgment of the Circuit Court of the United States for the District of Kansas, holding the statute under consideration to be not retrospective but prospective only, reaching its conclusion by the following course of reasoning:

"But if an action accrued more than the limited time before the statute was passed a literal interpretation of the statute would have the effect of absolutely barring such action at once.  It will be presumed that such was not the intent of the Legislature.  Such an intent would be unconstitutional.  To avoid such a result, and to give the statute a construction that will enable it to stand, courts have given it a prospective operation.  In doing this, three different modes have been adopted by different courts. One is to make the statute apply only to causes of action arising after its passage.  But as this construction leaves all actions existing at the passage of the act without any limitation at all (which, it is presumed, could not have been intended), another rule adopted is, to construe the statute as applying to such existing actions only as have already run out a portion of the statutory time, but which still have a reasonable time left for prosecution before the statutory time expires—which reasonable time is to be estimated by the court—leaving all other actions accruing prior to the statute unaffected by it.  The latter rule does not seem to be founded on any better principle than the former.  It still leaves a large class of actions entirely unprovided with any limitation whatever, or, as to them, is unconstitutional, and is a more arbitrary rule than the first.  A third construction is that which was adopted by the court below in this case, and which we regard as much more sound than either of the others."

But in the later case of *Koshkonong v. Burton,* 104 U. S. 668, 26 L. Ed. 836, in discussing this question, the same court said:

"* * * If the proviso, in its application to some cases, is obnoxious to the objection that it does not allow sufficient time within which to sue before the bar takes effect, and is therefore unconstitutional, as impairing the obligation of the contract between the town and its existing creditors, it does not follow that the entire act would fall and become inoperative.  The result, in such case,

would be, that the plaintiff, and other holders of the coupons, would have not simply one year, but  *  *  *  a reasonable time after its passage within which to sue."

And in 6 Enc. U. S. Sup. Ct. Reps. 884, it is said:

"Although a statute of limitation subsequently passed may be obnoxious to the objection that it does not allow sufficient time within which to sue before the bar takes effect, and is therefore unconstitutional, as impairing the obligation of a contract, yet it does not follow that the entire act would for this reason fall and become inoperative.  The result would be that the holders of the contract held to be barred by the unconstitutional statute would have a reasonable time after its passage within which to sue."

In *Milbourne v. Kelley,* 93 Kan. 753, 145 Pac. 816, decided on January 9, 1915, the Supreme Court of Kansas declined to follow the rule adopted in *Sohn v. Waterson, supra,* and adhered to that announced in *Morton v. Sharkey,* McCahon, 113, 1 Kan. (Dass. Ed.) 536, and said:

" 'The Legislature must give a reasonable time to bring suits on causes of action which are not barred by the existing law when the new one is enacted' (syl. 4), and it was held that where the act fails so to provide, suit may be brought within a reasonable time after the passage of the new act.  The case was cited with approval in *Shepard v. Gibson,* 88 Kan. 305, 128 Pac. 372.  *  *  *"

Our own territorial Supreme Court followed *Sohn v. Waterson, supra,* in *Southgate v. Frier,* 8 Okla. 435, 57 Pac. 841, *Huber v. Zimmerman,* 8 Okla. 573, 58 Pac. 737, and *Fuller v. Johnson,* 8 Okla. 601, 58 Pac. 745, and, although the precise question has not been squarely decided since statehood, the same view of the law is indicated in *Theis v. Board of County Com'rs of Beaver Co.,* 22 Okla. 333, 97 Pac. 973, and *In re Mosher,* 24 Okla. 61, 102 Pac.

705, 24 L. R. A. (N. S.) 530, 20 Ann. Cas. 209.  But the instant case necessarily involves this question and presents the somewhat anomalous situation of a statute of limitation that has been in force in that territorial portion of the state which was formerly Oklahoma Territory since 1893, and that portion which was formerly Indian Territory only since the admission of these territories to statehood on November 16, 1907; and this situation seems to require a re-examination of the question as to which of the foregoing rules of construction should be applied in the instant case, where neither the plaintiff nor the defendant acquired any right in respect to the limitation upon plaintiff's remedy by suit prior to statehood and said section 3890, Stat. 1893 (section 4657, Rev. Laws 1910), was the law of this state at the time this action was commenced and is therefore the law of this case in this regard.  The Indian Territory and the Territory of Oklahoma each bear practically the same relation as antecedents to the State of Oklahoma; and, as it is the law of this state that must govern this question of limitation upon plaintiff's remedy, it seems better to construe this statute literally, subject to the qualification stated in *Koshkonong v. Burton, supra,* and compute time from the commencement of the action back to the original accrual of the cause of action, and thus have the same rule of construction whether the cause accrued in the one or the other territory—thus alone can any approximation of uniformity in the remedies of creditors and other claimants throughout the state be attained. Section 2, art. 25 (Williams', sec. 366), in the Schedule of the Constitution reads:

"All laws in force in the Territory of Oklahoma at the time of the admission of the state into the Union,  *

\* \* shall be extended to and remain in force in the State of Oklahoma. \* \* \*"

Section 21 of the Enabling Act (Williams', sec. 433), in our Constitution also provides:

"\* \* \* All laws in force in the Territory of Oklahoma at the time of the admission of said state into the Union shall be in force throughout said state, except as modified or changed by this act or by the Constitution of the state. \* \* \*" .

It appears from these provisions that if plaintiff's cause of action had accrued in Oklahoma Territory and had been subject to the running of said section 3890, Statutes 1893 (section 4657, Rev. Laws 1910), until statehood, time would be computed under this statute in this action from the commencement of the action back to December 15, 1905, although the plaintiff's remedy would not have been barred and the defendant would have acquired no right under this statute prior to statehood, when there was a change in jurisdictions; and the better reasoning seems to require that time should be computed back to the same date in the instant case, notwithstanding plaintiff's cause of action originally accrued under and was subject to the statutes of limitations of Arkansas in force in Indian Territory prior to statehood and a retrospective construction is generally to be avoided.

Sections 46 and 46z, art. 5 (Williams', secs. 108 and 134), of our Constitution read:

"(108) Sec. 46. \* \* \* The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing: \* \* \*

"(134) Sec. 46z. \* \* \* For limitation of civil or criminal actions. \* \* \*"

Section 59, art. 5 (Williams', sec. 148), of our Constitution reads:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special laws shall be enacted."

The rule of uniformity prescribed by the foregoing provisions of our Constitution seems to require computation of time in such cases as the instant one from the commencement of the action back to the original accrual of the cause of action alike in every part of the state (and not only to the admission of Oklahoma to statehood or to one time in one part of the state and to another time in another part of the state), as the language warrants it, and this statute merely relates to the remedy for the enforcement of rights—it is merely the law of the forum relating to the question as to whether a plaintiff has a remedy by action at law at the time such an action is commenced.

It cannot be thought that the framers of said Constitution intended to renew, in effect, all unbarred causes of action in the Indian Territory upon its admission to statehood without renewing such causes of action existing at the time in Oklahoma Territory; and neither can it be thought that the intent was to renew, in effect, all unbarred causes of action existing in both territories at the time of statehood, although our statute, as a law of this state, was not in force anywhere until November 16, 1907; but, in view of our constitutional requirement of uniformity, this appears to be the only alternative to a disregard of this requirement unless, as seems reasonable, our present statute be given a retrospective as well as prospective effect throughout the state.

This subdivision of section 3890, Statutes 1893 (section 4657, Rev. Laws 1910), is both retrospective and prospective, when considered from November 16, 1907, when it first became a law of this state; and it is applicable alike in all cases of this character commenced in the courts of this state since statehood; but, if this statute had shortened the period of limitation prescribed by the prior statute so as to completely bar at the time of the admission of Oklahoma to statehood any cause of action as literally applied, the result would be that in such a case time would be computed from the commencement of the action only back to a point of time at which plaintiff already had had a reasonable time within which to commence his action, as the statute would be unconstitutional and void in respect to time back of that point.

For the reasons stated, I agree that the judgment of the trial court should be reversed.

SHARP, J., concurs in the above concurring opinion.