## FOREMAN v. MARKS et al.

No. 10793—Opinion Filed Oct. 3, 1922.

(Syllabus.)

1. **Limitation of Actions — Land Suits — Law in Indian Territory.**

No person or persons, or their heirs, shall have, sue or maintain any action or suit, either in law or equity, for any lands, tenements, or hereditaments but within seven years next after his, her, or their rights to commence, have, or maintain such suit shall have come, fallen, or accrued; and all suits, either in law or equity, for the recovery of any lands, tenements, or hereditaments shall be had and sued within seven years next after title or cause of action accrued, and no time after said seven years shall have passed. Section 5056, Kirby's Digest of the Statutes of Ark. of 1904.

2. **Same — Accrual of Cause of Action.**

Under the foregoing section of the statute of limitations as contained in Mansfield's Digest of the Statutes of Arkansas (sec. 4471, which was by act of Congress (26 Stat. 81, sec. 31), put into force in the Indian Territory, the statute would not begin to run until the right to commence or maintain the action shall have accrued.

3. **Indians — Right to Eject Persons from Allotment—Statutes.**

Under the Cherokee allotment agreement, approved by act of Congress of July 1, 1902, and ratified by the Cherokee Nation August 7, 1902, as contained in 32 U. S. Stat. at L. 716, an allottee of said Cherokee Nation could not maintain an action in court to eject persons from his allotment until he had received his patent.

4. **Same — Exclusive Authority of Department Officials.**

By section 21 of the Cherokee allotment agreement, supra, the exclusive authority to place an allottee in possession of his allotment and remove other persons therefrom prior to receiving his patent is vested in the United States Indian agent for the Union Agency under the direction of the Secretary of the Interior, and his action cannot be

controlled by the writ or process of any court.

## 5. Same — Time for Running of Statute of Limitations.

Under the stipulated facts in this case, the Cherokee allotment agreement and the statute of limitations above referred to, as contained in Mansfield's Digest in force in the Indian Territory, said statute of limitations did not begin to run until the 17th day of September, 1907, the date the Secretary of the Interior approved the patent conveying the land in controversy in this action to Zachariah Foreman, the allottee.

Error from District Court, Washington County; Preston A. Shinn, Judge.

Action in ejectment by Zachariah Foreman against L. W. Marks et al. Verdict and judgment for defendants, and plaintiff appeals. Reversed and remanded, with directions.

J. M. Springer and E. G. Wilson, for plaintiff in error.

Rowland & Talbott, for defendants in error.

MILLER, J. This is an action in ejectment commenced in the district court of Washington county, on December 6, 1912, by plaintiff in error, as plaintiff, against the defendants in error, as defendants, wherein the petition alleged in part as follows:

"That plaintiff has the legal estate in fee simple and the equitable estate in and to the following described real estate situated in Washington county, Okla., to wit: East half of the northwest quarter of the southwest quarter and west half of the northeast quarter of the southwest quarter and southeast quarter of the southwest quarter of the northwest quarter of section one (1), township twenty-eight (28) north, range thirteen (13).

"The plaintiff says that he is a citizen of the Cherokee Nation, of Oklahoma, and duly enrolled on the freedman roll thereof opposite roll No. 915, and that the above-described land was duly allotted to him as a part of his allotment in the Cherokee Nation, Indian Territory, now Oklahoma, as provided by law, and is entitled to the immediate possession of the same."

Then follows an allegation of damages for wrongful detention of the property and to recover the value of oil and gas produced and sold off the premises. The prayer is for a judgment for the possession of the premises, for damages, and other relief. The defendants filed an answer, and for their defense relied on a deed executed on the 30th day of March, 1905, by plaintiff, Zachariah Foreman, to L. W. Marks. The plaintiff alleged in his reply that the deed from him to

Marks was executed while he was yet a minor under the age of 21 years; that he did not reach his majority until May 22, 1905. The case was tried and judgment rendered in favor of the plaintiff. An appeal was taken by defendants to this court (Marks v. Foreman, 67 Okla. 13, 168 Pac. 237), in which the judgment of the trial court was reversed and the cause sent back for a new trial.

Before the case was retried, the trial court permitted the defendants to amend their answer. By this amendment they plead that the action was barred by the seven years' statute of limitations in force in the Indian Territory at the time the action arose.

The case was again tried to a jury on February 3, 1919. During this trial the following stipulation of facts was entered into by the parties:

"By Mr. Rowland: It is stipulated and agreed that the lands involved in this suit were a part of the lands of the Cherokee Tribe, and were duly allotted to the plaintiff, who was a freedman citizen of the Cherokee Tribe, enrolled opposite No. 915, and that under date of August 19, 1907, there was executed in favor of the plaintiff, by the Principal Chief of the Cherokee Nation, a deed or patent conveying such lands to the plaintiff, which was approved by the Secretary of the Interior on September 17, 1907, and filed on August 11, 1907; that on the 30th day of October, 1905, the plaintiff executed and delivered to the defendant L. W. Marks warranted deed covering the lands in suit; that on the 8th day of April, 1905, the defendant Marks executed to the defendant Leslie Combs his quitclaim deed covering the lands in suit; and that on the 7th day of October, 1905, the defendant Combs delivered to the defendant Holm his quitclaim deed covering the lands in suit; and that on the 5th day of January, 1906, the defendant Holm executed and delivered to the defendant Generva Oil Company his quitclaim deed covering the lands in suit; that all of said deeds were recorded as alleged in defendants' answer. It is further stipulated that the land in question was selected as a part of his surplus lands, on the 30th day of March, 1905, prior to the execution of the deed by the plaintiff to the defendant L. W. Marks."

At the conclusion of this trial the defendants requested the court to give the following peremptory instruction:

"Defendants ask the court to instruct the jury in favor of defendants for the reason that the suit was filed December 6, 1912, and over seven years after the cause of action accrued and after plaintiff reached his majority."

The court sustained this motion, and instructed the jury as follows:

"By the Court: Gentlemen of the Jury: You are instructed by the court to return a verdict in favor of the defendants, for the reason that the suit was filed December 6, 1912, over seven years after the cause of action accrued and after the plaintiff reached his majority."

Pursuant to this instruction the jury returned a verdict in favor of the defendants. The plaintiff saved all necessary exceptions and perfected this appeal. For convenience, the parties will be designated as plaintiff and defendants.

The plaintiff relies upon three assignments of error as follows:

"(1) The court below erred in excluding competent and material evidence offered by the plaintiff.

"(2) The court below erred in instructing the jury, peremptorily, to return a verdict for the defendants.

"(3) The court below erred in overruling the motion of the plaintiff for a new trial."

The second assignment of error is the first one discussed by plaintiff in his brief. The only question raised by this assignment of error is, Was the action barred by the statute of limitations? The briefs filed by the parties have not been of any material aid in considering this question. The plaintiff in his original brief and reply brief has cited some authorities that are not in point and do not touch the question involved. The defendants in error in their brief say:

"The seven-year statute of limitations in force in the Indian Territory in 1905 is a complete bar to plaintiff's recovery in this action. The deed which is attacked herein was given on March 30, 1905. The plaintiff's contention is that he reached his majority May 22, 1905. Assuming (but by no means conceding) that this is true, the suit was filed more than seven years after he reached his majority, and about seven years and eight months after the deed was made. It is now settled beyond all controversy that where a cause of action arose prior to statehood and the statute of limitations began to run, the change to statehood does not operate to apply a new statute of limitations. The statute as fixed by Mansfield's Digest of the Statutes of Arkansas is the controlling statute. Patterson v. Rousney, 58 Okla. 185, 159 Pac. 636; Davis v. Foley, 60 Okla. 87, 159 Pac. 636, 1917-A, L. R. A. 187; Maine et al. v. Edmonds, 58 Okla. 645, 160 Pac. 483; Kelsay v. Kelsay Land Co. et al., 64 Okla. 291, 166 Pac. 173; Bilby v. Diamond et al., 71 Oklahoma, 174 Pac. 758."

The foregoing cases cited by defendants are based upon different sections of the statute of limitations contained in Mansfield's Digest of the Statutes of Arkansas, and hold that where the cause of action and right of action accrued while Mansfield's Digest was in force, the time in which to bring the action was not changed by statehood and the adoption of the Constitution and laws of the state of Oklahoma. However, not any one of these cases deals with the statute of limitations as invoked against Indians who seek to recover their lands, either allotted or inherited, and this question has not been briefed by either party. The basic law upon which the foregoing decisions rest is found in the preamble to the schedule to the Constitution, which reads:

"In order that no inconvenience may arise by reason of a change from the forms of government now existing in the Indian Territory and in the territory of Oklahoma, it is hereby declared as follows:

"Section 1. No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place. * * *

"Sec. 2. All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma, until they expire by their own limitation or are altered or repealed by law."

See Patterson v. Rousney, 58 Okla. 185, 159 Pac. 636.

The purpose of the schedule to a constitution has been very ably defined by Williams, J., in section 2d of the syllabus in Arie v. State, 23 Okla. 166, 100 Pac. 23, which reads:

"2d. A schedule to a constitution generally contains temporary provisions for the preparatory machinery necessary to put the principles of the government under the Constitution in motion without disorder or collision, not as a rule to control the principles of the organic law, or to limit the same, but to carry the whole into effect without break or interval."

Neither this basic law nor the decisions above cited determine the question presented by the peremptory instruction given by the court to the jury. Section 1 of the Enabling Act prohibits the state of Oklahoma from placing anything in its Constitution that shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said territory or limit or affect the authority of the United States Government to make any laws or regulations respecting the Indians, their lands, property, or other rights. Said section reads as follows:

"That the inhabitants of all that part of the area of the United States now consituting the territory of Oklahoma and the Indian Territory, as at present described, may adopt a constitution and become the state of Oklahoma, as hereinafter provided: Provided, that nothing contained in the said constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if this act had never been passed."

Plaintiff in error insists that the deed executed by the plaintiff to defendant Marks was a deed to restricted land, because plaintiff was a minor at the time of its execution on March 30, 1905, and therefore the deed was absolutely void, and under section 72 of the act of Congress of July 1, 1902, providing for the allotment of lands of the Cherokee Nation, it is not barred by the statute of limitations. That part of the section relied upon reads as follows:

"Any agreement or lease of any kind violative of this section shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

The plaintiff in error cites Stevens v. Elliott, 30 Okla. 41, 118 Pac. 407, to support his views, but this case does not touch the statute of limitations. It holds that a deed made to a minor's restricted land in violation of the federal laws is void.

Plaintiff next contends that a void deed is not color of title sufficient to start the statute of limitations. But in this case we are not confronted with the question of color of title. Neither do we think it necessary to apply section 1 of the Enabling Act, supra, or said section 72 of the act of Congress, July 1, 1902, supra, and we are not expressing any opinion as to the effect of these laws on the statute of limitations. The question of the statute of limitations raised in this case can be disposed of by considering the statute itself and certain acts of Congress relating to the Cherokee Tribe of Indians.

Neither of the parties has pointed out which specific section of the statute of limitations contained in Mansfield's Digest was relied upon, but on examination we conclude section 5056, as contained in Kirby's Digest of the Statutes of Arkansas of 1904, is the section invoked. That part of said section applicable reads as follows:

"No person or persons, or their heirs, shall have, sue, or maintain any action or suit, either in law or equity, for any lands, tenements, or hereditaments but within seven years next after his, her, or their rights to commence, have, or maintain such suit shall have come, fallen, or accrued; and all suits, either in law or equity, for the recovery of any lands, tenements, or hereditaments shall be had and sued within seven years next after title or cause of action accrued, and no time after said seven years shall have passed."

It will be observed that under the foregoing section of the statute it is not a question of possession under color of title, but the statute provides that the action must be commenced within seven years next after the right to commence or maintain the suit shall have accrued.

It is essential that we next determine when the right of action accrued in favor of the plaintiff so that he could maintain the action. In determining this we must consider the following sections of chapter 1375, which is the Cherokee allotment agreement, approved by act of Congress of July 1, 1902, and ratified by the Cherokee Nation August 7, 1902, found in 32 U. S. Stat. at L., page 716.

"Section 21. Allotment certificates issued by the Dawes Commission shall be conclusive evidence of the right of an allottee to the tract of land described therein, and the United States Indian agent for the Union agency, shall, under the direction of the Secretary of the Interior, upon the application of the allottee, place him in possession of his allotment, and shall remove therefrom all persons objectionable to him, and the acts of the Indian agent hereunder shall not be controll by the writ or process of any court."

"Sec. 58. The Secretary of the Interior shall furnish the Principal Chief with blank patents necessary for all conveyances herein provided for, and when any citizen receives his allotment of land, or when any allotment has been so ascertained and fixed that title should under the provisions of this act be conveyed, the Principal Chief shall thereupon proceed to execute and deliver to him a patent conveying all the right, title, and interest of the Cherokee Nation, and of all other citizens, in and to the lands embraced in his allotment certificate.

"Sec. 59. All conveyances shall be approved by the Secretary of the Interior, which shall serve as a relinquishment to the grantee of all the right, title, and interest of the United States in and to the lands embraced in his patent.

"Sec. 60. Any allottee accepting such patent shall be deemed to assent to the allotment and conveyance of all the lands of the

tribe as provided in this act, and to relinquish all his right, title, and interest to the same, except in the proceeds of lands reserved from allotment.

"Sec. 61. The acceptance of patents for minors and incompetents by persons authorized to select their allotments for them shall be deemed sufficient to bind such minors and incompetents as to the conveyance of all other lands of the tribe."

Under the stipulation entered into by the parties on the trial of this case, the land was selected on the 30th day of March. 1905. The stipulation does not disclose when the allotment certificate was issued by the Dawes Commission, but, under section 21, supra, the United States Indian agent, under the direction of the Secretary of the Interior, had the sole and exclusive right to place the plaintiff in possession or remove therefrom persons objectionable to him, and the acts of the Indian agent could not be controlled by the writ or process of any court. It is clear from the reading of this section that no court, either of law or equity, could acquire jurisdiction at the suit of the plaintiff to determine his rights to the possession of the land in controversy. The plaintiff's rights were under the exclusive control of the Secretary of the Interior, acting through the United States Indian agent, and his exclusive authority and control continued until the patent was issued under section 58, supra. Under said section, the legal title to the land did not pass to the allottee until the patent issued, for it is the patent which conveys all the right and interest of the Cherokee Nation and all other citizens in and to the lands embraced in his allotment certificate. But the execution of the patent by the Principal Chief of the Cherokee Nation was not sufficient to vest in the allottee a perfect title. Under section 59, supra, it is necessary that the conveyance shall be approved by the Secretary of the Interior, and this approval serves as a relinquishment to the grantee of all the right, title, and interest of the United States in and to the lands embraced in his patent. In Irvine v. Marshall, 20 How. 558. 15 L. Ed. 994. the Supreme Court of the United States said in the syllabus:

"Whenever the question in any court, state or federal, is whether a title to land which was once the property of the United States has passed, that question must be solved by the laws of the United States."

It certainly could not be said that the plaintiff's right to commence or maintain an action had accrued until he could invoke the jurisdiction of a court to determine his rights.

Under the stipulation the Principal Chief of the Cherokee Nation, on August 19, 1907, executed the patent conveying the lands to the plaintiff, and this was approved by the Secretary of the Interior on September 17, 1907; therefore the statute of limitations would not begin to run prior to September 17, 1907, when he acquired his legal title.

In Wilcox v. Jackson, 13 Pet. 498. 10 L. Ed. 264, the Supreme Court of the United States held in the syllabus as follows:

"Nothing passes a perfect title to public lands, with the exception of a few cases. but a patent. The exceptions are, where Congress grants lands, in words of present grant. The general rule applies as well to preemptions as to other purchases of public lands.

"The act of the Legislature of Illinois. giving a right to the holder of a register's certificate of the entry of public lands to recover possession of such lands in an action of ejectment, does not apply to cases where a paramount title to the lands is in the hands of the defendant, or of those he represents. The exception in the law of Illinois applies to cases in which the United States has not parted with the title to the land, by granting a patent for it.

"A state has a perfect right to legislate as she may please in regard to the remedies to be prosecuted in her courts, and to regulate the disposition of the property of her citizens. by descent, devise, or alienation. But Congress are invested, by the Constitution, with the power of disposing of the public land, and making needful rules and regulations respecting it.

"Where a patent has not been issued for a part of the public lands. a state has no power to declare any title, less than a patent, valid against a claim of the United States to the land, or against a title held under a patent granted by the United States.

"Whenever the question in any court, state or federal, is whether the title to property which had belonged to the United States has passed, that question must be resolved by the laws of the United States. But whenever the property has passed. according to those laws, then the property, like all other in the state, is subject to state legislation; so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States."

In McGannon v. Straightlege, 32 Kan. 524. the syllabus reads:

"Under the treaty between the United States and the confederated tribes of Kaskaskias, Peorias, Piankeshaws and Weas. of May 30, 1854 (10 U. S. Stat. at Large, 1082). an Indian was allotted a certain piece of land. and before the patent was issued he executed a deed therefor to the defendant's grantor. Such deed has never been approved by the Secretary of the Interior. The de-

fendant and his grantor have been in the quiet and peaceable possession of the land ever since, and for more than 15 years prior to the commencement of this action. After the patent was issued to said Indian, and after his death, and on June 23, 1882, his sole surviving heir executed a deed of conveyance for the land to the plaintiff, and on October 10, 1882, such deed was approved by the Secretary of the Interior, and on April 25, 1883, the plaintiff commenced: this action against the defendant to recover the land. Held, that neither this action nor the plaintiff's title to the land is barred by any statute of limitations."

In Sheldon v. Donohoe, 40 Kan. 346, the syllabus reads:

"D., a white man who had been adopted as a member of an Indian tribe, made a deed purporting to convey to S., a white man who was not a member of any Indian tribe, a tract of land which under a treaty with the United States could not be alienated, leased, or otherwise disposed of. except to the United States or to some members of the same tribe. S. paid D. a part of the purchase-price. and held possession of the land for about 16 years, when D. again came into possession. In an action of ejectment by S. against D. to recover the land, it is held that the deed was absolutely void; that S. could not acquire any right in the land in violation of the treaty, nor could he indirectly build up one by adverse possession, estoppel, or any statute of limitations, and that therefore his action must fail."

In paragraph 4 of the syllabus in O'Brien et al. v. Bugbee et al., 46 Kan. 1. the Supreme Court of Kansas held:

"Where a plaintiff brings his action in the nature of ejectment against a defendant in the actual possession of Indian land, properly patented to a member of the Shawnee Tribe (now deceased), under the provisions of a treaty between the United States and the Shawnee Indians, concluded on the 10th day of May, 1854, and the act of Congress of March 3, 1859, and such defendant claims color of title and possession under a deed from the chiefs of the tribe, approved by the Secretary of the Interior, the prior possession of such Indian land. by the plaintiff is not sufficient for him to recover upon as against such a defendant, if such plaintiff fails to show any title or other right of possession on his part."

The principles announced by Mr. Justice Field in speaking for the United States Supreme Court in Gibson v. Chouteau, 13 Wall. 92, 20 L. Ed. 534, are conclusive that the statute of limitations has not run against the plaintiff in this action. We quote from the syllabus:

"(1) Statutes of limitation of a state do not apply to the state itself unless it is expressly designated or the mischiefs to be remedied are of such a nature that it must necessarily be included; and they do not apply to the United States.

"(2) The power of Congress in the disposal of the public domain cannot be interfered with nor its exercise embarrassed by any state legislation; nor can such legislation deprive the grantee of the United States of the possession and enjoyment of the property granted, by reason of any delay in the transfer of the title after the initiation of proceedings for its acquisition.

"(3) The patent is the instrument which, under the laws of Congress, passes the title of the United States, and in the action of ejectment in the federal courts for lands derived from the United States, the patent when regular on its face, is conclusive evidence of title in the patentee. In the action of ejectment in the state courts when the question presented is, whether the plaintiff or the defendant has the superior title from the United States, the patent is also conclusive.

"(4) The occupation of land derived from the United States before the issue of their patent, for the period prescribed by the statutes of limitation of a state for the commencement of action for the recovery of real property, is not a bar to an action of ejectment for the possession of such land founded upon the legal title subsequently conveyed by the patent. Nor does such occupation constitute a sufficient equity in favor of the occupant to control the legal title, thus subsequently conveyed, whether asserted in a federal court, or set up as an equitable defense to an action of ejectment in a state court."

As this case will have to be sent back for a new trial, it will not be necessary for us to pass on the other assignments of error.

The judgment of the trial court is reversed, and this cause remanded, with instructions to set aside the judgment and grant the plaintiff a new trial.

KANE, JOHNSON, McNEILL, KENNAMER, and NICHOLSON, JJ., concur.