**HARRIS et al. v. GRAYSON et al.**

No. 11654. Opinion Filed Dec. 19, 1922.

Readopted and Ordered Refiled Nov. 15, 1927.

Rehearing Denied Feb. 28, 1928.

(Syllabus.)

1. **Limitation of Actions—Land Suits—Arkansas Statutes.**

"No person or persons, or their heirs, shall have, sue, or maintain any action or suit, either in law or equity, for any lands, tenements, or hereditaments but within seven years next after his, her, or their rights to commence, have, or maintain such suit shall have come, fallen, or accrued; and all suits, either in law or equity, for the recovery of any lands, tenements, or hereditaments shall be had and sued within seven years next after title or cause of action accrued, and no time after said seven years shall have passed. * * *" Section 4471, Mansfield's Digest of the Laws of Arkansas.

2. **Same—Title—Accrual of Cause of Action.**

Under the foregoing section, a person's title to lands, tenements, or hereditaments has accrued simultaneously with acquiring such title, either by purchase or inheritance.

3. **Same—Pleading Statute in Bar—Burden of Proof.**

If more than seven years after acquiring title such person, or his or her heirs, bring an action either in law or equity to recover said lands, and the statute of limitations is pleaded as a bar of the right of action, the burden of proof rests upon the plaintiff to show facts that take it out of the bar of the statute of limitations.

4. **Same—Cause of Action Arising in Indian Territory—Statute Controlling.**

Where a cause of action arose prior to statehood and while the Arkansas law was in force in the Indian Territory and the Arkansas statute of limitations began to run, the change to statehood does not operate to apply a new statute of limitations. The statute as fixed by Mansfield's Digest of the Statutes of Arkansas is the controlling statute.

5. **Same.**

The lands sought to be recovered in this action are located in what was formerly known as the Indian Territory and the cause of action accrued in July, 1906, while the Arkansas laws were in force in said Indian Territory; this action was not commenced until August 4, 1917. Held, the action was barred by the seven-year statute of limitations set forth in section 4471, supra.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Isom Grayson and others against James A. Harris and others to recover certain lands located in Creek County, Okla. Judgment for plaintiff, and defendants Harris and another appeal. Reversed and remanded, with instructions.

See, also, 120 Okla. 285, 264 Pac. 627.

Geo. S. Ramsey, G. Earl Shaffer, and Robert F. Blair, for plaintiffs in error.

Thos. H. Owen, A. A. Hatch, Watts & Watts, Gidney & Gidney, Turner & Turner, W. T. Hunt, A. C. Hunt, Wallace & Stevens, J. T. Smith, John E. Williams, and Alvin F. Molony, for defendants in error.

MILLER, J. This is an action in ejectment commenced in the district court of Creek county by Isom Grayson and approximately 150 others, as plaintiffs, against James A. Harris and seven others, as defendants, to recover two certain tracts of land situated in Creek county, Okla., each containing 160 acres more or less; one being the allotment of Nancy Colbert and the other being the allotment of Garfield Colbert. Nancy Colbert was a Creek freedman, enrolled as such opposite roll No. 5641, a female, age three years. She was enrolled as of date of March 15, 1906. The enrollment record shows that she died in the spring of 1900. The petition filed by the plaintiffs states that she died March 1, 1900, and left surviving her her father, Jim Colbert, and her mother, Louisa Colbert. The petition further states that her mother, Louisa Colbert, died March 7, 1900. The land was allotted in the name of Nancy Colbert on July 9, 1906.

Garfield Colbert was a Creek freedman and enrolled as such on March 15, 1906, opposite roll No. 5640, a male, six years of age. The enrollment record shows that he died in the spring of 1900. The petition states that he died in June, 1900. That he left surviving him, as his heirs, Jim Colbert, his father, and Gertrude Grayson, a half-sister, who was the illegitimate daughter of Louisa Colbert by John Foster, a noncitizen. The tract referred to as his allotment was allotted in the name of Garfield Colbert on July 9, 1906.

Jim Colbert was enrolled in September, 1898, as a Creek freedman, opposite roll No. 2645, a male, age 36 years. The petition further states that Gertrude Grayson was enrolled opposite roll No. 5684 of the Creek freedman rolls, and that she died in April, 1907, intestate and without issue.

The plaintiffs in their petition claim that on July 9, 1906, when said lands were allotted in the names of Nancy Colbert and Garfield Colbert, Jim Colbert and Gertrude Grayson were their only surviving Creek heirs at law, and that each became the owner of an undivided one-half of said lands. It is conceded that James Brann, one of the defendants herein, is the owner of an undivided one-half interest in each of said allotments, and his undivided interest is not in controversy in this action.

It is further admitted that George Tobler was the maternal grandfather of Gertrude Grayson, and that he died about 1890. That Cloria Tobler was the maternal grandmother of Gertrude Grayson and the widow of George Tobler. Cloria Tobler is otherwise known as Cloria Grayson, and she is not a citizen of the Creek Nation.

The plaintiffs' petition alleges that Micey Keys is a Creek citizen and the sister of George Tobler, who was the maternal grandfather of Gertrude Grayson and the other plaintiffs, all of whom are alleged to be Creek citizens and descendants of the other brothers and sisters of the said George Tobler.

The record shows that Micey Keys and Jim Tobler conveyed their interest in the land to Cloria Grayson, and Cloria Grayson conveyed all of her interest in the land to L. A. Bell, and by mesne conveyances defendants James A. Harris and William H. Harris acquired whatever interest Cloria Grayson had.

The defendants Harris and Harris, as their defense, claim to be the absolute owners of an undivided one-half interest in and to all of said lands, claiming that Cloria Grayson inherited from Gertrude Grayson. They also plead the statute of limitations as against the plaintiffs and each of them.

The case was tried to the court without a jury, which resulted in a judgment decreeing that the plaintiffs inherited the land from Gertrude Grayson and that they were the owners thereof, except that defendants Harris and Harris were the owners of the interest inherited by Micey Keys and Jim Tobler. Harris and Harris appeal and appear here as plaintiffs in error.

Numerous assignments of error have been made by plaintiffs in error, but it will not be necessary to set them out in detail here. These various assignments of error have been discussed under seven propositions. We will first consider proposition No 5 as set out in the brief of plaintiffs in error, which reads:

"(5) The plaintiffs' cause of action, if any they have, to recover an undivided one-half interest in said land, or any other interest, accrued prior to November 16, 1907, the date Oklahoma was admitted as a state, and is therefore barred by the Arkansas seven-year statute of limitations, embodied in section 4471 of Mansfield's Digest."

Section 4471, Mansfield's Digest of the Laws of Arkansas, is as follows:

"No person or persons, or their heirs, shall

have, sue, or maintain any action or suit, either in law or equity, for any lands, tenements or hereditaments but within seven years next after his, her, or their rights to commence, have, or maintain such suit shall have come, fallen, or accrued; and all suits, either in law or equity, for the recovery of any lands, tenements, or hereditaments shall be had and sued within seven years next after title on cause of action accrued, and no time after said seven years shall have passed. * * *"

Here follows a proviso that if any persons at the time their right to maintain the action first accrued were minors, femme covert, or non compos mentis, they would have three years after the removal of such disability to bring their action, but as it is not pleaded or contended, and there is no proof in the record, that Gertrude Grayson or any of the plaintiffs in the court below were under such disabilities, it is not necessary to consider the proviso.

It has been settled by the decisions of this court beyond all controversy that where a cause of action arose prior to statehood and the Arkansas statute of limitations began to run, the change to statehood does not operate to apply a new statute of limitations. The statute as fixed by Mansfield's Digest of the Statutes of Arkansas, when once it has begun to run, is the controlling statute. Foreman v. Marks, 87 Okla. 205, 209 Pac. 1040; Patterson v. Rousney, 58 Okla. 185, 159 Pac. 636; Davis v. Foley, 60 Okla. 87; 159 Pac. 646, L. R. A. 1917A, 187; Maine v. Edmonds, 58 Okla. 645, 160 Pac. 483; Kelsey v. Kelsey Land Co., 64 Okla. 291, 166 Pac. 173; Bilby v. Diamond, 71 Okla. 40, 174 Pac. 758.

The next question to consider is, When did the statute of limitations begin to run?

As has already been stated, the plaintiffs in the court below allege in their petition that when the lands were allotted on July 9, 1906, in the names of Nancy Colbert and Garfield Colbert, Jim Colbert and Gertrude Grayson were their only surviving Creek heirs at law, and that each (Jim Colbert and Gertrude Grayson) became the owner of an undivided one-half of said lands. This means that Gertrude Grayson's title accrued to her on July 9, 1906. The last part of the foregoing quotation from section 4471, supra, says:

"* * * And all suits either in law or equity, for the recovery of any lands, tenements, or hereditaments shall be had and sued within seven years next after title or cause of action accrued, and no time after said seven years shall have passed. * * *"

It will be observed that "title or cause of action" is used in the disjunctive. It does not say "title and cause of action," joining the two together, but it disjoins them, or separates the two; therefore the section as applied in this case may be read by leaving out the words "or cause of action." It would then read as follows:

"* * * And all suits either in law or equity, for the recovery of any lands, tenements, or hereditaments shall be had and sued within seven years next after title accrued, and no time after said seven years shall have passed."

The first part of said section 4471, supra, says that "no person or persons, or their heirs, shall * * * maintain the suit." That covers the question presented in this case. Neither Gertrude Grayson, nor her heirs, shall have, sue, or maintain any action or suit, either in law or equity, for the recovery of any lands, tenements, or hereditaments but within seven years next after her title accrued. That is the title of Gertrude Grayson.

The phrase "or cause of action" therein used makes provision for an entirely different contingency than is presented here. A person may have been vested with the title to a tract of land for ten or more years, and then put a tenant on the land who may go into possession as a tenant, but thereafter assert title and ownership. In this instance the latter phrase, "or cause of action accrued," would apply. The cause of action would accrue when the tenant asserted ownership. But when a person acquires title to real estate either by purchase or inheritance, his "title" has accrued simultaneously with acquiring it within the meaning of said section 4417, supra. If more than seven years after acquiring title such person, or his or her heirs, bring an action, either in law or equity, to recover said lands and the statute of limitations is pleaded as a bar of the right of action, the burden of proof rests upon the plaintiff to show facts that take it out of the bar of the statute of limitations. In McNeil v. Garland & Nash, 27 Ark. 343, paragraph 1 of the syllabus reads:

"Where a plea of the statute of limitation, in bar of the right of action, is traversed, the burden of proof is on the plaintiff to show both a cause of action, and the suing out of process within the period mentioned."

This case was decided by the Supreme Court of Arkansas at the December term of court, 1871, and it applies to the statute of limitations of Arkansas. Under the well-

known rules of construction, when the Arkansas law was put in force in the Indian Territory the construction theretofore placed upon such laws by the Supreme Court of Arkansas was likewise adopted and put in force in the Indian Territory.

The parties in their briefs have made repeated reference to the question of color of title and adverse possession, but, as was said in the case of Foreman v. Marks, supra:

"It will be observed that under the foregoing section of the statute it is not a question of possession under color of title, but the statute provides that the action must be commenced within seven years next after the right to commence or maintain the suit shall have accrued."

In this case the question is, When did the title accrue under which the plaintiffs are asserting their ownership and right of action? The title accrued on July 9, 1906, and the action was barred within seven years next thereafter, unless the plaintiffs plead and prove a state of facts which either relieves them from the bar of the statute or tolls the statute. The defendants in error have not pointed out anything in either the pleadings or the proof that relieves them from the statute of limitations. It is not even suggested that the lands were restricted or that Gertrude Grayson or the plaintiffs in the lower court were under any disability of any kind that would prevent the statute of limitations from beginning to run. In the case of Schrimpscher et al. v. Stockton et al., 183 U. S. 290, 46 L. Ed. 203, we quote from the syllabus as follows:

"(1) The heirs of a Wyandotte Indian to whom, as an incompetent, was allotted a tract of land, under the treaty of January 31, 1855, between the United States and the Wyandotte Indians, are bound to institute ejectment against those claiming to hold such land adversely under a grant from such incompetent within the period specified by the statute of limitations, after the date of ratification of the treaty of February 23, 1867, removing all restrictions upon sales of lands patented to incompetent Wyandottes which should thereafter be made."

"(3) A deed executed by an Indian patentee under the treaty of January 31, 1855, between the United States and the Wyandotte Indians, valid upon its face, in which the grantor covenanted that he was seized in fee simple, had good right to sell the same, that it was free from incumbrance, and that he would warrant and defend the title unto the grantees against the claims of all persons—constitutes color of title in the grantees, who paid value therefor and had no notice of any defect in the title of their grantor, although the patentee was classed as an incompetent under such treaty, and took under a patent which provided that the land should never be sold or conveyed by the grantee or his heirs without the consent of the Secretary of the Interior.

"(4) The failure of the Secretary of the Interior to confirm or avoid a sale of land by an incompetent Indian in violation of the treaty of January 31, 1855, between the United States and the Wyandotte Indians, does not prevent the statute of limitations from beginning to run against the right of his heirs to maintain ejectment against his grantees at the date of ratification of the treaty of February 23, 1867, removing all restrictions upon sales of land patented to incompetent Wyandottes which should thereafter be made, and authorizing the Secretary of the Interior to investigate and confirm or avoid such sale theretofore made."

The plaintiffs in error further contend that the evidence fails to show that the plaintiffs in the court below are the same persons who are enrolled on the Creek freedman rolls. They set forth in their brief, as a concrete example, the failure of the testimony to identify the plaintiff Isom Grayson as the same Isom Grayson enrolled on the Creek freedman rolls, wherein they say:

"Let us take the first name, Isom Grayson, to whom the court below awarded 1-33 part of this land (C. M.- p. 736). We find this information: 'No. 807, name Isom Grayson, age 30, sex M, census card No. 224.' But what does this prove? That proves that a male person by the name of Isom Grayson was enrolled on the Creek freedman roll opposite No. 807, and that the number of the census card upon which further information appeared was 224. But that does not prove that he is one of the plaintiffs in this case, or that the plaintiff Isom Grayson is the same Isom Grayson enrolled opposite that roll number as a Creek freedman. There is nothing at all in this record to identify the two persons as being the same one. If the court will read his testimony, beginning at page 170 and ending at page 185 of the record, it will be seen that he does not even claim that his roll number is 807. Counsel for plaintiffs could only prove that fact by the census card plus the testimony of the person himself, and they omitted to do that."

We have examined the record and think this contention is well founded and applies not only to plaintiff Isom Grayson, but also to the other plaintiffs in the court below. However, as the action of the plaintiffs in the court below was barred by the statute of limitations and they cannot maintain this suit, it will not be necessary to go into this question or any of the other questions presented by the plaintiffs in error.

The judgment of the trial court is reversed, and this cause is remanded to the trial court, with instructions to vacate the judgment appealed from and render judgment in favor of the plaintiffs in error, confirming their title in and to an undivided one-half interest in said lands as against all of the defendants in error.

HARRISON, C. J., and JOHNSON, KENNAMER, NICHOLSON, and COCHRAN, JJ., concur.

Note.—See under (1) 37 C. J. p. 738, §57; p. 740, §58. (2) 37 C. J. p. 813, §159. (3) 37 C. J. p. 1244, §770; 17 R. C. L. p. 1004; 6 R. C. L. Supp. p. 1042. (4) 37 C. J. p. 729, §46. (5) 19 C. J. p. 1088, §89: 37 C. J. p. 729, §46.